1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11   JOSEPH HELM,                              No.  2:11-CV-01703-MCE-EFB

12              Plaintiff,

13        v.                                   **MEMORANDUM AND ORDER**

14   UNITED STATES OF AMERICA,

15              Defendant.

16

17        Through this personal injury action, Plaintiff Joseph Helm ("Plaintiff") seeks to

18   recover from the United States of America ("United States" or the "Government") under

19   the Federal Tort Claims Act ("FTCA"), for injuries sustained in an automobile accident.

20   Presently before the Court is the United States' Motion in Limine to exclude all of

21   Plaintiff's experts (ECF No. 82) and Motion for Summary Judgment (ECF No. 83).  For

22   the following reasons, the Motion in Limine is DENIED without prejudice, and the Motion

23   for Summary Judgment is GRANTED in part and DENIED in part.[1]

24   ///

25   ///

26   ///

27   _____
          [1] Because oral argument will not be of material assistance, the Court ordered this matter
28   submitted on the briefs.  E.D. Cal. Local Rule 230(g).

1

1

2

**BACKGROUND**

3    Plaintiff originally initiated this action in June 2011 against the United States

4    Postal Service and its employee, rural mail carrier Jay Negus, alleging claims for

5    (1) negligence and (2) negligent hiring, entrustment, and supervision arising out of a car

6    accident.  Compl., ECF No. 1.  The following year, the United States substituted in as the

7    proper party Defendant and successfully moved to dismiss Plaintiff's second cause of

8    action.  Order, ECF Nos. 21, 26.

9    As to the remaining claim, Plaintiff contends that Mr. Negus, while driving in the

10   scope and course of his employment, negligently made an unlawful turn in front of him

11   as he was approaching from the opposite direction.  Compl. at ¶¶ 14-16.   Plaintiff

12   swerved to avoid hitting the postal carrier, who had come to a stop in Plaintiff's path, and

13   instead hit another vehicle and then a tree.  Id. at ¶16.  As a result, Plaintiff contends he

14   suffered a "right shoulder tear resulting in surgery, neck injury, back injury, puncture

15   wound, and other injures."  Id. at ¶ 21.

16   In his disclosures pursuant to Federal Rule of Civil Procedure 26,[2] Plaintiff makes

17   clear:

18   Plaintiff is not claiming lost wages; his economic losses are
     composed of past medical bills, most of which have been
19   produced, in the amount of about $44,000;

20   future, possible neck surgery, estimated to be in excess of
     $50,000, including surgeon's fee, hospital and related costs,
21   and the cost to rehabilitate through physical therapy; and,

22   lost earning capacity (Plaintiff will, with the physical limitations
     placed on him because of his injuries, be unable to do certain
23   things, such as serve in the armed forces), including benefits
     and military pension losses, amount to be determined by
24   expert testimony, but likely exceeds $500,000; and,

25   general damages for pain and suffering, humiliation, worry,
     frustration, despair, anger, and related symptoms likely will
26   exceed $350,000.

27   _____
     [2] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless
28   otherwise noted.

2

1    Pl.'s Supp. Discl., ECF No. 43-3, at 4-5.[3]  Plaintiff also disclosed a retained accident

2    reconstruction and biomechanics expert, four non-retained treating physicians, and a

3    California Highway Patrol officer.  Plaintiff did not disclose an expert to testify on lost

4    earning capacity, military benefits and military pension losses, or regarding any physical

5    limitations placed on him because of his injuries.  Gov. Sep. Statement of Undisputed

6    Facts ("SSUDF"), ECF No. 83-2, Nos. 12-14.  He also did not designate any witness

7    from the military to testify that Plaintiff cannot serve in the armed forces, nor did he

8    disclose an economic expert.  Id., Nos. 15-16.  For its part, the Government disclosed its

9    own medical expert, Dr. John O. Missirian, (ECF No. 49) after which all experts were

10   deposed.

11       The Government subsequently filed its instant motions arguing that all of Plaintiff's

12   experts should be excluded and that, absent such expert testimony, summary judgment

13   is proper because Plaintiff is unable to establish medical causation or lost earning

14   capacity and future medical damages.  Plaintiff opposed the Government's motion for

15   summary judgment, but did so without relying on any of his own expert testimony.  The

16   Government's Motion in Limine is thus DENIED without prejudice as moot.[4]  Its Motion

17

18       [3] All page citations are to the page numbers electronically assigned when the documents are filed
     on CMECF.

19

20       [4] Plaintiff set the hearing date on his Motion in Limine for October 16, 2014, and his summary
     judgment hearing for November 13, 2014.  In violation of Eastern District of California Local Rule 230(c),
     Plaintiff failed to timely oppose the Government's evidentiary motion, and, on October 8, 2014, the Court

21   issued an Order to Show Cause ("OSC") directing Plaintiff to show in writing why that Motion should not be
     granted.  ECF No. 84.  On October 18, 2014, Plaintiff's counsel responded, explaining that "one reading of

22   the Local Rules mandated opposition seven days before hearing of said motion" and that he had intended
     to file his opposition on October 9.  ECF No. 90 at 1.  In addition, counsel reasoned that "it [was] doubtful a

23   meaningful opposition could have been filed by October 2, 2014, because the personal computer, back-up
     system, and central server of the office of Plaintiff's attorney crashed the night of September 18, 2014, or

24   the morning of September 19, 2014."  Id. at 1-2.  "All data stored on the system was corrupted."  Id. at 2.
     According to counsel, he utilized data recovery specialists to try to recover the data, which they were

25   apparently able to do by the date the OSC was issued.  Id.  Counsel indicated that he would file Plaintiff's
     opposition within a few days.  Id.  Eight days later, on October 26, 2015, Plaintiff filed a response opposing

26   in part the Government's evidentiary motion.  Counsel's explanation for his failure to timely respond to the
     Motion in Limine, especially given his ability to respond to the substantive motion during the same time

27   period and the fact that he failed to seek an extension or update the Court at any time when he had ample
     opportunity to do so, is wholly insufficient.  Counsel is hereby sanctioned $250 for failure to comply with

28   the Local Rules and orders of this Court.  Counsel is admonished that further failures of this kind will result
     in the imposition of further sanctions.

1 | for Summary Judgment is GRANTED in part and DENIED IN PART.

2 |

3 | **STANDARD**

4 |

5 |        The Federal Rules of Civil Procedure provide for summary judgment when "the

6 | movant shows that there is no genuine dispute as to any material fact and the movant is

7 | entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v.

8 | Catrett, 477 U.S. 317, 322 (1986).  One of the principal purposes of Rule 56 is to

9 | dispose of factually unsupported claims or defenses.  Celotex, 477 U.S. at 325.

10 |       Rule 56 also allows a court to grant summary judgment on part of a claim or

11 | defense, known as partial summary judgment.  See Fed. R. Civ. P. 56(a) ("A party may

12 | move for summary judgment, identifying each claim or defense—or the part of each

13 | claim or defense—on which summary judgment is sought."); see also Allstate Ins. Co. v.

14 | Madan, 889 F. Supp. 374, 378-79 (C.D. Cal. 1995).  The standard that applies to a

15 | motion for partial summary judgment is the same as that which applies to a motion for

16 | summary judgment.  See Fed. R. Civ. P. 56(a); State of Cal. ex rel. Cal. Dep't of Toxic

17 | Substances Control v. Campbell, 138 F.3d 772, 780 (9th Cir. 1998) (applying summary

18 | judgment standard to motion for summary adjudication).

19 |       In a summary judgment motion, the moving party always bears the initial

20 | responsibility of informing the court of the basis for the motion and identifying the

21 | portions in the record "which it believes demonstrate the absence of a genuine issue of

22 | material fact."  Celotex, 477 U.S. at 323.  If the moving party meets its initial

23 | responsibility, the burden then shifts to the opposing party to establish that a genuine

24 | issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co. v. Zenith

25 | Radio Corp., 475 U.S. 574, 586-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S.

26 | 253, 288-89 (1968).

27 |       In attempting to establish the existence or non-existence of a genuine factual

28 | dispute, the party must support its assertion by "citing to particular parts of materials in

4

1   the record, including depositions, documents, electronically stored information,

2   affidavits[,] or declarations . . . or other materials; or showing that the materials cited do

3   not establish the absence or presence of a genuine dispute, or that an adverse party

4   cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).  The

5   opposing party must demonstrate that the fact in contention is material, i.e., a fact that

6   might affect the outcome of the suit under the governing law.  Anderson v. Liberty Lobby,

7   Inc., 477 U.S. 242, 248, 251-52 (1986); Owens v. Local No. 169, Assoc. of W. Pulp and

8   Paper Workers, 971 F.2d 347, 355 (9th Cir. 1987).  The opposing party must also

9   demonstrate that the dispute about a material fact "is 'genuine,' that is, if the evidence is

10  such that a reasonable jury could return a verdict for the nonmoving party."  Anderson,

11  477 U.S. at 248.  In other words, the judge needs to answer the preliminary question

12  before the evidence is left to the jury of "not whether there is literally no evidence, but

13  whether there is any upon which a jury could properly proceed to find a verdict for the

14  party producing it, upon whom the onus of proof is imposed."  Id. at 251 (quoting

15  Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)) (emphasis in original).  As the

16  Supreme Court explained, "[w]hen the moving party has carried its burden under Rule

17  [56(a)], its opponent must do more than simply show that there is some metaphysical

18  doubt as to the material facts."  Matsushita, 475 U.S. at 586.  Therefore, "[w]here the

19  record taken as a whole could not lead a rational trier of fact to find for the nonmoving

20  party, there is no 'genuine issue for trial.'"  Id. at 87.

21       In resolving a summary judgment motion, the evidence of the opposing party is to

22  be believed, and all reasonable inferences that may be drawn from the facts placed

23  before the court must be drawn in favor of the opposing party.  Anderson, 477 U.S. at

24  255.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

25  obligation to produce a factual predicate from which the inference may be drawn.

26  Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd,

27  810 F.2d 898 (9th Cir. 1987).

28  ///

1

**ANALYSIS**

2

3      "The FTCA waives the federal government's sovereign immunity for tort claims

4  arising out of the negligent conduct of government employees and agencies in

5  circumstances where the United States, if a private person, would be liable to the

6  claimant under the law of the place where the act or omission occurred."  Bailey v.

7  United States, 623 F.3d 855, 859 (9th Cir. 2010).  In order to establish negligence under

8  California law, a plaintiff must establish four required elements: (1) duty; (2) breach;

9  (3) causation; and (4) damages."  Ileto v. Glock, Inc., 349 F.3d 1191, 1203 (9th Cir.

10  2003).  The Government moves for summary judgment here arguing Plaintiff cannot

11  prove medical causation (i.e., that the injuries he claims arose from the accident he

12  alleges) or future damages for lost earning capacity or anticipated medical care.

13      "The law is well settled that in a personal injury action causation must be proven

14  within a reasonable medical probability based upon competent expert testimony.  Mere

15  possibility alone is insufficient to establish a prima facie case."  Jones v. Ortho

16  Pharmaceutical Corp., 163 Cal. App. 3d 396, 402 (1985).  Similarly, "the plaintiff has the

17  burden of proving, with reasonable certainty, the damages actually sustained by him as

18  a result of the defendant's wrongful act . . . ."  Chaparkas v. Webb, 178 Cal. App. 2d 257,

19  259 (1960).  "[D]amages which are speculative, remote, imaginary, contingent or merely

20  possible cannot serve as a legal basis for recovery."  Mozzetti v. City of Brisbane,

21  67 Cal. App. 3d 565, 577 (1977).  Accordingly, the Government is correct that if Plaintiff

22  cannot produce evidence linking the injuries he claims to the accident with Mr. Negus,

23  that he will need additional medical care due to those injuries in the future, and that he

24  lost the ability to pursue a military career because of the accident, summary judgment is

25  warranted.

26      In opposition, Plaintiff does not produce any of his own expert testimony or other

27  competent evidence capable of showing the requisite causation and damages.  Instead,

28  he argues first that "[i]t is quite astounding that . . . the USA produces no evidence of

6

1   comparative fault and fails utterly to show that its postal carrier . . . was not a cause of

2   the subject collision." Pl.'s Opp., ECF No. 91,at 3.  He further contends that, regardless,

3   "an expert witness is not needed to show that Joseph Helm suffered a laceration to his

4   right flank and a bump on his head in the subject collision." Id. at 3-4.  Plaintiff makes no

5   mention of the Government's damages argument.  Plaintiff has thus failed to point to

6   triable issues of material fact underpinning the bulk of his negligence claim.

7       Indeed, Plaintiff's first argument is easily dispatched.  The Government did not

8   move for summary judgment on the basis of who caused the accident.  Any such inquiry

9   is premature.

10      In addition, there is no evidence before the Court as to any damages Plaintiff

11  might recover for his anticipated lost earning capacity.  While Plaintiff asserts in his

12  Response to Defendant's Separate Statement of Undisputed Facts ("Pl.'s Resp.") that

13  "Plaintiff . . .can and will testify as to the reasons he has not enlisted and the statements

14  made to him which led to his rejection from military service," (ECF No. 86, No. 15) this is

15  plainly insufficient to withstand summary judgment.  Not only would statements made to

16  Plaintiff be inadmissible hearsay, but neither those statements nor his own testimony

17  would prove that Plaintiff is entitled to over $500,000 in damages for lost military wages,

18  benefits, and pensions.  Moreover, even if Plaintiff did intend to rely solely on his own

19  testimony, he was obligated to produce that evidence now. See Fed. R. Civ. P. 56(c).  In

20  sum, Plaintiff was required to put on evidence to create a triable issue of fact, and he has

21  not.  The Government's motion is GRANTED as to these damages.

22      Similarly, Plaintiff has failed to point to any competent evidence that he suffered

23  shoulder, back, or neck injuries as a result of the accident.  Instead of relying on his own

24  experts, Plaintiff relies on portions of the testimony offered by the Government's expert,

25  Dr. Missirian.  According to Plaintiff, Dr. Missirian stated that some of Plaintiff's treatment

26  was reasonable and necessary, the MRI findings with regard to the cervical spine were

27  not normal for a person Plaintiff's age, and there was no evidence of any spinal injury

28  ///

either prior to the accident or that would have been caused thereafter.  Pl.'s Resp., No. 3.

Dr. Missirian did testify that Plaintiff was injured in the accident.  According to Dr. Missirian, Plaintiff "had a laceration of his flank, laceration of his elbow, and . . . a bump on his forehead."  Missirian Depo., ECF No. 88-1, at 10.  It followed that some treatment was also appropriate:

> I think his visit to the emergency room and to have his laceration sutured was reasonable.  The evaluations in the emergency room were reasonable.  Subsequent to his discharge from the emergency room, a couple visits to his pediatrician or his treating doctor would have been reasonable.  That would have been what I would have liked to see as treatment.  At 17 years old, the potential to recover is very, very good as compared to a 70 year old man.

Id. at 11.  Ultimately, however, Dr. Missirian opined in his report that:

> [I]n the opinion of this examiner, the entire medical and surgical care that [Plaintiff] came to acquire for his right shoulder following the motor vehicle accident in question should be viewed as unrelated to any physical injuries he could have sustained.
>
> . . .
>
> It is the strong opinion of this examiner that the motor vehicle accident in question resulted in lacerations along [Plaintiff's] right flank, right elbow, and a bump over his forehead with no other injuries specifically referable to the neck or the right shoulder joint.
>
> The soft tissue injuries to these areas could have resulted in a temporary period of discomfort over a period of four to six weeks and then would have subsided.  Besides the visit to the emergency department on the day of the accident in question, two or three visitations to his treating physician to remove his stitches and to monitor his progress and reassure him about his condition were all that were reasonably necessary following the accident of June 24, 2009.  Instead, the patient has received an extensive amount of medical and surgical care, not commensurate with the possible objective injuries he could have sustained.

Id. at 24-25.[5]

_____

[5] The Court notes that Dr. Missirian was asked, "Is it possible that Mr. Helm's spine at C3-C4 was, in fact, injured in the June 24, 2009, collision?"  Id. at 13.  Dr. Missirian responded, "Is it possible? It is possible, but the symptoms or the findings on the record do not support that."  Id.  This statement, even

Accordingly, even assuming Plaintiff eventually proves that Mr. Negus caused the accident, because Plaintiff adopted the opinions of the Government's expert, he is limited to pursuing recovery for his two skin lacerations, the bump on his head, and for the emergency room visit and subsequent primary care visits necessitated thereby.[6] The Government's Motion is DENIED with respect to these injuries and medical expenses and GRANTED in all other respects.

**CONCLUSION**

IT IS HEREBY ORDERED that:

1.     Not later than ten (10) days following the date this Memorandum and Order is electronically filed, Plaintiff's counsel, Russell A. Robinson, is directed to pay sanctions in the amount of $250 to the Clerk of the Court for failure to comply with local rules and the orders of this Court;

2.     The Government's Motion in Limine (ECF No. 82) is DENIED without prejudice;

3.     Its Motion for Summary Judgment (ECF No. 83) is GRANTED in part and DENIED in part consistent with the foregoing;

4.     Given the dramatically diminished nature of Plaintiff's claims, trial on this matter, currently set for Monday, May 4, 2015, and all other pretrial dates are VACATED; and

///

///

---

taken out of context, is insufficient to create a triable issue of fact as to the extent of Plaintiff's injuries because Plaintiff is required to prove causation "within a reasonable medical probability based on competent expert testimony.  Mere possibility alone is insufficient to establish a prima facie case."  <u>Jones</u>, 163 Cal. App. 3d at 402.

[6] Because Plaintiff is limited to claims relating to these injuries, any testimony as to future medical expenses due to a purported back or neck injury are irrelevant.  <u>See</u> Pl.'s Resp., No. 16 (advising that "Plaintiff's non-retained expert surgeon, Vikram Talwar, M.D., opined as to the costs of future surgery").

1         5.     The parties are ordered to participate in a settlement conference before

2    Magistrate Judge Carolyn K. Delaney.  The Magistrate Judge will issue a scheduling

3    order, and counsel is instructed to have a principal with full settlement authority present

4    at the Settlement Conference or to be fully authorized to settle the matter on any terms.

5         IT IS SO ORDERED.

6    Dated:  February 6, 2015

7

8

9    _____

     MORRISON C. ENGLAND, JR., CHIEF JUDGE

10   UNITED STATES DISTRICT COURT

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28